IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**UNITED STATES OF AMERICA**                                                           **PLAINTIFF**

**V.**                              **CASE NO. 5:96-cr-50001-001**

**DENNIS CORDES**                                                              **DEFENDANT**

### MEMORANDUM OPINION AND ORDER
### DENYING COMPASSIONATE RELEASE

Before the Court is Defendant Dennis Cordes's Motion for Compassionate Release Due to the COVID-19 Pandemic. (Doc. 361). Mr. Cordes moves for a reduction of his prison sentence and immediate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and the First Step Act of 2018 (the "FSA"). He argues that his circumstances, which include the unprecedented COVID-19 pandemic, present "extraordinary and compelling reasons" for release. The Government has filed a copy of Mr. Cordes's medical records (Doc. 368), and it has also filed a Response in Opposition to his Motion (Doc. 367). Mr. Cordes then filed a Supplement to the Motion (Doc. 369). For the following reasons, the Court finds that Mr. Cordes is not entitled to compassionate release and therefore **DENIES** the Motion (Doc. 361).

### I. BACKGROUND

In 1996, Mr. Cordes pleaded guilty to one count of attempted manufacture of methamphetamine and one count of attempted manufacture of methcathinone. (Doc. 110, p. 1). On October 21, 1996, Mr. Cordes was sentenced to 240 months on Count One and 132 months on Count Two, to run consecutively for a total sentence of 372 months, three years of concurrent supervised release, a fine of $25,000, and a special assessment of $100. *Id.* at pp. 2–4. Mr. Cordes entered federal custody on March 28,

1

1996.  (Doc. 20).  The Court believes that he has served approximately 302 months of his 372-month sentence.

Mr. Cordes previously appealed his charges, but the Eighth Circuit Court of Appeals affirmed this Court's findings.  (Doc 348, p. 1).  He also filed multiple motions requesting post-conviction relief, each of which have been denied, including a motion to reduce his sentence due to a retroactive amendment to U.S.S.G. § 2D1.1(c).  *See* Docs. 345 & 348.

According to Mr. Cordes, he is 72 years old, suffers from chronic migraines, has high blood pressure, and walks with a cane.  Mr. Cordes's medical records indicate that he has the following medical accommodations:  (1) he is limited to a first floor cell with a lower bunk; (2) he is allowed to use handicapped showers; (3) he may use an arm sling, cane, and abdominal binder; (4) he is to avoid prolonged standing over ten minutes; (5) he cannot lift more than ten pounds; (6) he is to be cuffed only in the front; and (7) he may return to the housing unit "from mainline." (Doc. 368, p. 15).  In his Supplement to the Motion, Mr. Cordes explains that these restrictions are "because of [his] permanent[ly] damaged right leg and foot that is numb . . . ." (Doc. 369, p. 2).

## II.  LEGAL STANDARD

Mr. Cordes's sentence may be modified if the Court finds that:  (1) the requested sentence reduction is warranted due to "extraordinary and compelling reasons;" (2) the sentencing factors set forth in 18 U.S.C. § 3553(a) support a reduction "to the extent that they are applicable;" and (3) a reduction would be consistent with any applicable policy statements issued by the Sentencing Commission.  18 U.S.C. § 3582(c)(1)(A)(i).

Congress did not define what constitutes "extraordinary and compelling."  *See* 28

U.S.C. § 994(t).  Instead, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific examples" of extraordinary and compelling circumstances.  *Id*.  The Sentencing Commission did so before the First Step Act was passed, but it has not since updated its policy statement.  See U.S.S.G. § 1B1.13 cmt. n.1(A)-(D).  In subsections (A)–(C) of an Application Note to U.S.S.G. § 1B1.13, the Commission enumerated three specific "reasons" that qualify as "extraordinary and compelling":  (A) terminal illness diagnoses or serious medical, physical or mental impairments from which a defendant is unlikely to recover; (B) aging-related health decline where a defendant is over 65-years old and has served at least ten years or 75% of his sentence; or (C) two family-related circumstances:  (i) death or incapacitation of the only caregiver for the inmate's children or (ii) incapacitation of an inmate's spouse, if the inmate is the spouse's only caregiver.  *See id.* cmt. n.1(A)-(C).  In addition, the Application Note includes a "catch-all" provision that contemplates granting early release if a "reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" exists.  *Id.* at cmt. n.1(D).

In the wake of Congress's passage of the FSA, several district courts have held that federal judges may use their discretion to apply the criteria in Section 1B1.13, including the "catch-all" provision in Application Note 1(D), just as the BOP Director would when considering a request for compassionate early release.  *See United States v. Condon*, 2020 WL 2115807, at *3 (D. N.D. May 4, 2020) (listing cases); *United States v. Conner*, 2020 WL 3053368, at *3 (N.D. Iowa June 8, 2020) ("Although the Guideline provides helpful guidance on what constitutes extraordinary and compelling reasons, it is not conclusive given the recent statutory changes.").  The Court agrees with those district

courts who have found that "extraordinary and compelling reasons" for release may be justified outside of those listed in the non-exclusive criteria of subsections (A)–(C) of the Sentencing Commission's old policy statement. Of course, the Commission's existing policy statement provides helpful guidance, which the Court considers in its assessment. Applying this analysis, other district courts have found that the COVID-19 pandemic, in conjunction with other facts, qualifies as an "extraordinary and compelling" reason justifying a sentence reduction. *See United States v. Brown*, 2020 WL 2091802, at *9 (S.D. Iowa Apr. 29, 2020); *Miller v. United States*, 2020 WL 1814084, at *3–4 (E.D. Mich. Apr. 9, 2020); *United States v. Rodriguez*, 2020 WL 1627331, at *6–7 (E.D. Pa. Apr. 1, 2020).

### III. DISCUSSION

### A. Exhaustion of Administrative Remedies

As a threshold matter, Mr. Cordes must satisfy certain procedural requirements before the Court may consider his Motion. First, Mr. Cordes bears the burden of showing that he has already exhausted his administrative rights with the Bureau of Prisons ("BOP"). *United States v. Davis*, 2019 WL 6898676, at *1 (W.D. Tenn. Dec. 18, 2019). The relevant statute states that, in order for a court to modify a term of imprisonment after it has been imposed, the defendant must have

> fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier* . . . .

18 U.S.C. § 3582(c)(1)(A) (emphasis added). The second path set forth in the statute clearly states only that thirty days must pass after the defendant requests compassionate release from his warden. Nothing more is required. *United States v. Stephenson*, 2020

4

WL 2566760, at *2 (S.D. Iowa May 21, 2020) (citing *United States v. York*, 2019 WL 3241166, at *5 (E.D. Tenn. July 18, 2019)). In other words, § 3582(c)(1)(a)'s gate-keeping provision is not a true exhaustion requirement, "as it allows a defendant to come to court before the agency has rendered a final decision." *United States v. Haney*, 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020).

Here, more than 30 days have passed since Mr. Cordes sent his request for compassionate release to his warden. (Doc. 361, p. 13). The Government agrees that Mr. Cordes has exhausted his remedies. (Doc. 367, p. 10). Thus, Mr. Cordes has satisfied the statute's gatekeeping provision, and the Court turns to the merits of his Motion.

### B. Extraordinary And Compelling Reasons For Early Release

Mr. Cordes presents two alleged "extraordinary and compelling reasons" in support of his argument for a reduction of his sentence. First, he contends that his 1996 sentencing was—for various reasons—erroneous and that, had he been sentenced today, he would have received a shorter sentence. Second, Mr. Cordes states that the COVID-19 pandemic creates a substantial risk of him becoming severely ill due to his age and underlying health conditions.

As to his first argument, Mr. Cordes contends that his PSR improperly calculated the yield from his attempted manufacture of methamphetamine and methcathinone. He is incorrect, *see United States v. Eide*, 297 F.3d 701, 705 (8th Cir. 2002) (holding that the amount of methamphetamine a lab can produce may be calculated with the assistance of an expert), and the Eighth Circuit already rejected this argument in an appeal filed by Mr. Cordes's co-defendant. *See United States v. Gregory*, 1997 WL 7520, at *1 (8th Cir.

Jan. 10, 1997) (unpublished table decision) ("[T]he district court did not clearly err in adopting the presentence report's conservative approximations of the amount of drugs Gregory could have produced from the precursor chemicals found at his clandestine drug laboratory."). This argument does not establish an extraordinary and compelling reason for release.

Moreover, Mr. Cordes believes he should have been subject to a maximum penalty of ten years in prison pursuant to 21 U.S.C. § 843(d). Mr. Cordes is incorrect. Mr. Cordes was convicted of two counts of violating 18 U.S.C. §§ 841(a)(1), 846, and 18 U.S.C. § 2 for attempting to manufacture methamphetamine and methcathinone (Doc. 16). Attempts to manufacture a schedule II controlled substance carry a statutory maximum of twenty years' imprisonment under 21 U.S.C. § 841(b)(1)(C), assuming no quantity is alleged in the operative indictment. *See Wilson v. U.S.*, 2007 WL 1100441, at *6 (E.D. Tenn. Apr. 11, 2007); *Evans v. U.S.*, 1992 WL 277729, at *1 (8th Cir. 1992) (unpublished table decision). Furthermore, the Court did not err by sentencing Mr. Cordes to 372 months' imprisonment. While Mr. Cordes's maximum sentence on each count was 240 months, his Guideline range was 360 months to life, so the Court sentenced Mr. Cordes to 240 months on one count to run consecutively to a 132-month sentence on the other count. *Id.*

Mr. Cordes also argues that he would receive a lower sentence if he committed the same crimes today. (Doc. 361, p. 1–2). He is incorrect. It is true that, since his sentencing, the Sentencing Commission retroactively amended the base offense levels set forth in U.S.S.G. § 2D1.1(c). This amendment would have reduced Mr. Cordes's total offense level by two points from 40 to 38. Regardless, Mr. Cordes's criminal history

6

category is a VI, so Mr. Cordes's Guideline range would have remained 360 months to life. *See* Doc. 346.

Turning to Mr. Cordes' medical conditions, the Court finds that his conditions constitute "extraordinary and compelling reasons" for reducing his sentence. Mr. Cordes is a 72-year-old male suffering from chronic migraines and high-blood pressure resulting from hypertension. His medical records indicate that, per physician's orders, he is allowed to use handicapped showers, an arm sling, a cane, and an abdominal binder. (Doc. 368, p. 15). Furthermore, he is not supposed to stand for more than ten minutes or lift more than ten pounds. *Id.* In furtherance of these doctor's orders and to avoid prolonged standing, he is allowed to use the "short line" to receive his meals. *Id.* Mr. Cordes explains that he has received these accommodations due to the fact that his right leg is "numb." (Doc. 369). In the Court's view, Mr. Cordes's medical infirmities—particularly his documented weakness and limited mobility—demonstrate a serious deterioration in his medical condition due to the aging process. *See* U.S.S.G. § 1B1.13 cmt. n.1(B).

### C. The Section 3553(a) Factors

Finally, the Court must "consider[ ] the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). In the Court's view, the applicable section 3553(a) factors do not warrant a sentence reduction for Mr. Cordes. The applicable factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for

7

>> (B) the law, and to provide just punishment for the offense;
>
> (C) to afford adequate deterrence to criminal conduct;
>
> (D) to protect the public from further crimes of the defendant; and
>
> (E) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> . . . [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a). The statute also mandates: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." *Id.*

Mr. Cordes's offense conduct is serious. According to his PSR, he was engaged in a scheme with others to manufacture methamphetamine in Northwest Arkansas. (Doc. 109-1, ¶ 19). He was held responsible for methamphetamine precursors that could have been used to produce anywhere from 2 to 8 pounds of methamphetamine. *Id.* Moreover, the events surrounding his capture are extremely egregious: When investigators attempted to detain him, he led officers on a high-speed chase through populated areas of Springdale, Arkansas. *Id.* at ¶¶ 17–18. Even more disturbingly, while he was awaiting sentencing in this case, Mr. Cordes escaped from the Washington County jail and was recaptured a week later in Oklahoma. *Id.* at ¶ 23.

The Court also notes Mr. Cordes's extensive criminal history: He was charged with second-degree escape for attempting to escape from the Pope County jail and, in a separate incident, he burglarized an elementary school and attacked an officer who was sent to investigate. *Id.* at ¶¶ 46–47. He also has an extensive criminal history in

Springdale that spans from 1962 to 1995, including various acts of violence. *Id.* at ¶ 51. The Court took all of these facts into consideration and ultimately sentenced Mr. Cordes to 372 months' imprisonment, which was near the bottom of his Guideline range of 360 months to life.

By the Court's calculation, it appears that Mr. Cordes has served approximately 302 months—or 81%—of his 372-month sentence. In the Court's view, this amount of time is insufficient to reflect the seriousness of his offense conduct, to promote respect for the law, and to afford adequate deterrence to those who would seek to engage in similar criminal activities. Mr. Cordes's offense conduct and criminal history are very serious, and his penchant for escaping custody demonstrates a blatant disrespect for the law. While many years have passed since Mr. Cordes was a free man, the Court remains convinced that his sentence of 372 months is just and fair under the totality of the circumstances. For these reasons, the Court finds that the Section 3553(a) factors do not justify compassionate release of Mr. Cordes.[1]

### IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Dennis Cordes's Motion for Compassionate Release Due to the COVID-19 Pandemic (Doc. 361) is **DENIED**.

**IT IS SO ORDERED** on this 12th day of April, 2021.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[1] To the extent Mr. Cordes asks to serve the remainder of his sentence in home confinement, the FSA gives only the BOP—not the Court—the power to decide where Mr. Cordes serves his sentence. *See* 18 U.S.C. §§ 3624(c)(4), 3621(b).